PER CURIAM.
Respondent, Donald L. Farber, an attorney, was charged with solicitation of personal injury cases. A hearing thereon was duly heard before a referee for The Florida Bar. The referee in his report found as follows:
“Respondent is 34 years of age. He graduated from Law School of University of Miami in 1958 and has practiced law since graduation from Law School in the Miami area. He is married, has two children, and, with his wife, tákes part in community affairs. His general reputation is good.
“On February 11, 1964 Bert Lee McDaniel, son of Laura and William McDaniel, was injured in an auto accident in Miami. The boys’ worried parents hastened upon call to the scene of the accident from which they went with the boy to Nolan’s Garage to which the wrecked car had been towed. From Nolan’s they were taken to a doctor’s office in the Seybold Building in downtown Miami. At this point in time, Clarence McClaskey, connected with Nolan’s Garage and a son of its owner, telephoned respondent and directed him to meet the McDaniels at the doctor’s office in the Seybold Building.
“There is no evidence that McClaskey had either asked the McDaniels or that he had been asked by said McDaniels concerning employment of a lawyer. Respondent, pursuant to and following the telephone call from McClaskey, went to the doctor’s office in the Seybold Building in Miami, introduced himself to the McDaniels and obtained their signed retainer for his employment. The Mc-Daniels testified that their case was settled expeditiously and to their satisfaction. The evidence shows that the Mc-Claskey family had been clients for some time of the respondent who had represented members of the family in several personal injury cases. Respondent testified that McClaskey in his telephone call directing the respondent to the Mc-Daniels, had indicated there had been a request for a lawyer. Nevertheless there appears no show of diffidence or circumspection on the respondent’s part in establishing his direct contact and retainer in the doctor’s office.
“SUMMARY OF FINDINGS
“1. There was no evidence that respondent sought professional employment through others. There was evidence that the respondent did obtain professional employment- upon the direct recommendation of others. There was no evidence that the recommendations were made by anyone where the one recommending had any relationship or privity with respondent as the latter’s agent or employee or similar relationship for the purpose of soliciting legal business for him. State v. Williams, Fla. 1966, 183 So.2d 537, 539.
“2. I do not find that the evidence supports the charges that respondent solicited professional employment through Clarence McClaskey or persons unknown.
* * >{< ‡ * *
“4. I find that on February 11, 1964, respondent directly solicited professional employment from Laura McDaniel and William D. McDaniel, her husband, concerning a claim for personal injuries to their son Bert Lee McDaniel, and that prior to said employment, the respondent was not acquainted with any of the injured persons. I find that to the extent that paragraphs 3, 6 and 7 of the complaint charge the respondent with the aforesaid single act of direct solicitation of professional employment, the charge is supported by the evidence.”
*480 Based on these findings, the referee recommended to The Florida Bar as follows:
“RECOMMENDATIONS
“1. I recommend that the respondent be found guilty of direct solicitation of professional employment by personal communication and interview not warranted by personal relations, and that he be found guilty of violating Canon 27 of the Canons of Professional Ethics, Article XI, Rule 11.02(8) of The Integration Rule and Rule 19 of the Additional Rules Governing the Conduct of Attorneys in Florida.
“2. I recommend that the respondent be publicly reprimanded for his conduct and that all costs and expenses of these proceedings be charged against the respondent.”
The Board of Governors of The Florida Bar entered its judgment in the proceedings, which reads in part as follows:
“ * * * The charge concerning the clients Laura and William McDaniel is sustained and the Board of Governors finds the respondent guilty as charged.
“The Board noted that the referee is unable to make findings concerning the exact relationship between the clients, McDaniel, and one McClaskey an employee or officer of a wrecker service. The referee did, however, find that the Complaint was well taken insofar as it charges the respondent with having solicited the representation of William and Laura McDaniel in a physician’s office following the automobile accident of their son. The Complaint also charges, and the record shows that the respondent was found guilty of violating Chapter 877.02, Florida Statutes, because of such solicitation, by the Criminal Court of Record for Dade County.
“After consideration and discussion, the Board concluded that such conduct violates Canon 27 of the Canons of Professional Ethics, Rule 19 of the Additional Rules Governing the Conduct of Attorneys in Florida and the Integration Rule of The Florida Bar, Article XI, Rule 11.02(3) (b) and Rule 11.02(5). Upon consideration of all the foregoing, the Board directs that the respondent be suspended from the practice of law for six months and that he pay the costs of these proceedings in the amount of $418.-29.”
We have studied the briefs and the record and heard oral argument. Our view of the case differs from the views of the referee and the Board of Governors. It appears to us from the evidence of the Respondent which is not rebutted by countervailing evidence in the record from Clarence McClaskey, the garageman, or other evidence, that Respondent was prompted to believe his professional services were requested by the occurrence of certain events and circumstances, viz., the prior contact between McClaskey and the McDaniels which occurred because of the automobile accident wherein Bert Lee McDaniel was injured; the telephone call from McClaskey to Respondent concerning which Respondent testified that McClaskey represented to him in the call that the McDaniels had requested McClaskey to obtain an attorney to handle their accident case for them and accordingly McClaskey asked Respondent to meet the McDaniels at the doctor’s office the day of said accident; that when he appeared at the doctor’s office where Mc-Claskey directed him to meet the McDaniels the latter proceeded, without any indication on their part that Respondent’s appearance was unexpected or that they questioned the reason for his presence, to execute a written retainer with Respondent to handle the case consistent with McClaskey’s statement to Respondent that he had been asked by the McDaniels to have an attorney to get in touch with them.
Since McClaskey was a client of Respondent, whom he had known for some time, it seems consistent with reason that Respondent could repose confidence in Mc-Claskey’s representation to him. There is *481 no testimony from McClaskey, although he was called as a witness by The Florida Bar, denying that he called Respondent and told him that the McDaniels wanted him to meet them at the doctor’s office for the purpose of representing them as their attorney in the accident case. However, we note from an excerpt of testimony supplied us by counsel for Respondent taken in the trial of the criminal case against Respondent (see State ex rel. Farber v. Williams, Fla., 183 So.2d 537), which case grew out of the same facts upon which The Florida Bar’s complaint is predicated, Clarence Mc-Claskey testified under oath as follows:
“THE WITNESS: I towed these people’s car or their son’s car, I don’t know whose it was, to a Dodge place over on the Trial. If I remember right, they were closed.
“They made a statement that they were going to need a lawyer because the other party had one or had mentioned getting one. They said they would like to get a lawyer. They were going to need one.
“They asked me if I knew of any and I mentioned that I did, my father had used an attorney and I mentioned Don Farber’s name.
“We went to my other place, my place, and there was more conversation about it.
“Then I called Mr. Farber and told him of the circumstances and that was all I know about it.”
It appears from the testimony of the Mc-Daniels that they felt at the time of the accident they needed an attorney inasmuch as they understood the other party involved in the accident had said at the scene of the accident she would have an attorney to represent her; and while they are not positive in their recollection, the McDaniels testify they may have communicated their feeling they needed a lawyer to McClaskey. Respondent testified the McDaniels “seemed to have expected me in the doctor’s office and we got along very graciously.” In automobile accident cases it is not unusual for the parties involved to seek assistance of counsel very soon after an accident when the facts of the accident are fresh and especially where a police investigation is involved, as the record discloses was the case here.
From the foregoing it does not appear Respondent solely on his own initiative with an unethical intent directly solicited from the McDaniels the handling of their interests in the accident case. The unre-butted evidence is clear that the Respondent was led to believe by McClaskey the Mc-Daniels wanted an attorney and they asked him (McClaskey) to refer one to them. In fact, there is nothing in the record to the contrary. In any event, it does not appear from the record that under the related circumstances the Respondent knowingly acted on his own, either directly or indirectly, unprofessionally and with improper motive to solicit the business of handling the McDaniel accident case without justification or reason to believe the McDaniels had not asked him to get in touch with them.
It is our view of the case that the findings of the referee and The Florida Bar that Respondent directly solicited the handling of the accident case fail to give due consideration to the related antecedent circumstances occurring prior to the contact between Respondent and the McDaniels, and do not undertake to point out why there was no basis for a reasonable assumption on the part of Respondent that McClaskey was authorized by the McDaniels to ask Respondent to get in touch with them. Although in retrospect it may appear it would have been a wiser and safer course on the part of Respondent to have verified on his first contact with the McDaniels whether they had in fact asked McClaskey to refer him or any attorney to them; however, due to the related events and circumstances this failure of caution on the part of Respondent does not result in his being guilty of solicitation. We believe the particular circumstances merit our giving the Respondent the benefit of any doubts *482 as to whether he was guilty of the charge of solicitation.
For the reasons stated, the judgment of The Florida Bar does not appear to be sustained by competent evidence and is not approved by us, and the complaint against Respondent is dismissed.
It is so ordered.
CALDWELL, C. J., and ROBERTS, DREW, THORNAL and ERVIN, JJ., concur.